May it please the Court. Good morning. Michael Johnston on behalf of Bass Pro. The order on appeal in this case effectively rewrites Title VII's remedial provisions. It largely ignores this Court's decision in the Ellison case and the Supreme Court's decision in the Wal-Mart case. And it endorses an analytical framework that the EEOC candidly admitted to the District Court is virtually certain to force any defendant in a lawsuit of this nature to settle the case before they ever learn of the identity of the individuals for whom the EEOC is seeking highly— Well, counsel, let me understand those general large arguments. But under 706, under General Telephone, the Supreme Court of the United States made it quite clear that the government had the power to bring a suit which is effectively—we don't use the word pattern or practice, but it can be nothing else because the question there, the large question, are they required to comply with Rule 23? And the Court said no. So there you have under 706, and that was the law. Now, later with the Civil Rights Act, et cetera, and I understand your concerns, because then what happens, then Congress adds to the weaponry, the damage provisions, et cetera, right? Now, my question, though, is what happened to this power underlying— it was already given and recognized by the Supreme Court under 706. Now, you say, well, that meant they could represent all these people and so forth, but it plainly contemplated an analysis that would not be focusing on the individual single plaintiff defendant processes, but rather a process where the classic traditional pattern or practice suit— in other words, the pattern or practice process is no more than a different way of proving individual discrimination. Now, that's—so I come down to that. It seems to me you have to come up with something that says that Congress, post-General Telephone, altered the authority under 706. Your Honor, I would disagree that General Telephone specifically authorized the EEOC to use the Teamsters method in a case of this nature and especially a case after— How else could it have functioned? You could not—I've tried a lot to make these cases. I don't know how you would—I don't know analytically how you could do otherwise. I mean, you don't call it—you call it Teamsters, whatever you want to call it, but the government has to prove that this is an illegal practice, and that's a hard or difficult proof than going through the Burdine sequence. I think what we have to look at, Your Honor, is what was the context in which General Telephone was decided and what is the context in which this Court is being asked to determine whether Teamsters can be used by the EEOC under Section 706 to recover compensatory impunity damages. At the time of General Telephone— I mean, one more—then I understand your argument really to be a challenge to the particular method of proof that may be wielded by the EEOC under 706. That's correct, Your Honor, because the method of proof— There is no question that Rule 23 does not— You cannot comply with Rule 23. Ten years later in Allison, we made it quite clear in the private litigation that you really cannot maintain that type of lawsuit, right? That's correct, Your Honor, in the context of a private class action, and this Court has held—I'm sorry? Exactly, but that's what General Telephone says. This is not a private suit. It is the government proceeding. Absolutely, Your Honor, and there is no question about that. But in General Telephone at the time, looking at the context at the time, the Supreme Court did not— the Supreme Court addressed the very question that Your Honor raises, and that is does Rule 23 apply, and answered that question in the negative. The Supreme Court in General Telephone did not address the issue of whether or not Teamsters applied in that case. In fact, if you look carefully at the General Telephone decision, the word Teamsters is not used in the decision at all. You also have to look at it in the context of what the statute said at the time. At that point in time, there was no difference between the remedies that were available to either private plaintiffs or the EEOC under Section 706 or 707. And so at that point, it really didn't—there was no incentive on litigants to be precise as to which— it really didn't matter. There were no jury trials. There was only injunctive and back pay relief available. That all changed and made a huge change in the interpretation of the statute in 1991 when Congress enacted the Civil Rights Act of 1991 and drew a very— was back pay. Now— Correct. How—for the life of me, the calculation and the process of doing that is Teamsters, that process. It doesn't work otherwise. Your Honor, the Teamsters process, the two-step process, Stage 1, obviously addresses only the issue of the pattern of practice. Then you get to Stage 2 where we're talking about the calculation of back pay and how do we calculate back pay. Back pay under Teamsters is calculated—has to be, and after Wal-Mart, has to be calculated based upon individual hearings. In fact, even if we apply the Teamsters process in a 706 case, we're ultimately always going to have to have a Stage 2 proceeding that addresses individualized liability because Stage 1 only establishes pattern of practice liability. Stage 2, with respect to individuals, we have to have then an individualized determination with respect to every individual. I don't disagree with that. My question, though, is—would be this. That's essentially the same situation that you're always in. The difference is, though, that you have now determined effectively, as if it were a class action, what you have effectively done. You don't need the class because you've effectively determined the common—an issue of commonality across of liability. You've determined liability in the sense that X company is now—was guilty of a pattern of practice that is violative of the underlying act itself. In Stage 2, the question is, John Doe can demonstrate that that pattern of practice, having been found to be illegal, is a cause of injury, et cetera. You would have the individualized determination, but you would not have the individualized determination of liability. Now, I think where your argument gains some purchase is that what do you do with—and I'll ask counsel opposite that. What do you do with this additional ward punitive damages and these other things that were added by the Civil Rights Act? I think this—with respect to punitive damages, this Court has said that those are a Stage 2 proceeding, and that was a clear ruling in Allison. The issue, Your Honor, is even if you're going to—even if the text, even if you believe the— Allison just says that you can't—is that you—given these—the Civil Rights Act and those other complications, manageability problems, in a private litigation, you can't maintain a class act. I understand that, Your Honor, but that's a Seventh Amendment issue, which applies equally here as it would in Allison because the punitive damages issue is an individualized determination, and even if you're applying Teamsters under Section 706 for the EEOC, you don't get to the determination. In fact, according to the EEOC, the defendant doesn't even learn the identity of the individual claimants until Stage 2. So Stage 2 is where punitive damages have to be determined under everybody's application. What if you found—what if the finding in Stage 1 was that this particular pattern of practice was so pernicious, da-da-da-da-da, that the punitive damage should be awarded, and a lump sum awarded, and then that becomes part of the damage recoverable pro rata by the people who were injured by the practice? Your Honor, I think that would run counter to both Allison and to the Supreme Court's decision in— And what's very, very clear in general telephone, I'll put to you, is that when the Congress gave this power to the United States government in the general interest, and that Rule 23 is out of the picture, you're not constrained by Rule 23. I agree that Rule 23 is out of the picture with respect to— The statute has not been in any clear way amended to change that ground of authority. I agree Rule 23 is out of the question with respect to the EEOC, Your Honor. Certainly the Seventh Amendment is not and due process is not. In Kolstadt, the Supreme Court said that the award of punitive damages is a two-step process and that you first have to look at the egregiousness of the behavior of one individual to the other individual, the second individual being— Let's stop at that point. That's a very, very good point, and I think it's an important one. But if the burden would be, if there's going to be any punitive damage award, I want the government to demonstrate that the pattern of practice, effectively, that we found illegal meets the requisites to support an award of punitive damages. But you add to that, that has to be an individualized determination. Why is that individualized requirement there? Would it not apply equally to the underlying damage matters themselves if it's rooted in due process? I believe that it would apply in many cases to the underlying back pay issues, and, in fact, I think that's exactly what Wal-Mart said when it said that you have a right, the defendant has a right to present their defenses to damages with respect to every individual, and that takes us to another problem in this case. If we set aside the textual argument for a moment, and whether or not you can even do this, and you go to the manageability of these kind of cases, and you look at the fact that in this case the EEOC has estimated that there may be as many as 50,000 claimants that have a claim for some sort of damages in the case, and you marry that up with Wal-Mart's ruling that you have to have an individualized determination, and it is an individualized determination with respect to both liability and damages in Stage 2, and you look at the district court being faced with how to manage a case that involves 50,000, essentially many trials, and we submit in this case those many trials have to be tried by the same jury that tried the Stage 1 pattern of practice case because of the overlap in issues between the two. In your few minutes, do you want to mention the conciliation point, maybe discuss mock mining? Your Honor, with respect to mock mining, what we're arguing here is our primary argument with respect to the administrative prerequisites is that the EEOC did not conduct any investigation whatsoever of a Section 706 case. They've admitted during the course of the investigation they did not identify a single aggrieved person that would be required under Section 706. They've admitted during the course, and that was a three-and-a-half-year investigation, during the course of conciliation they did not identify any individual. Mock mining clearly says that with respect to conciliation, mock mining doesn't address investigation, but with respect to conciliation, you still have to look at the issue of whether or not any conciliation at all occurred. It is undisputed that with respect to the administrative prerequisites, the courts have the authority, and in fact the obligation, to look at whether or not those prerequisites were satisfied. Here we believe that the court should look at whether or not there's any evidence that the EEOC conducted any 706 investigation. We don't dispute that they investigated. We do dispute the sufficiency of a 707, but not a 706. They didn't investigate that at all, and mock mining doesn't prohibit the court from looking at that. Thank you. I have a question. I agree with you with regard to the prerequisites under 706 that have to be, that all of those must be met, including conciliation. My question really has to do with where specifically that, and your argument here is they failed to do that. My question is what does the record show with regard to the efforts of conciliation? With respect to conciliation, Your Honor, the record would demonstrate that during the conciliation process, the EEOC did not provide the defendant with any individual, the names of any individual claimants or the names of, or information that would allow us to identify those individuals, and yet they were claiming during the conciliation process the right to compensatory impunity damages. I remember that they came up with a hundred or so names or something at some point. Are you saying that came later? I'm not sure what happened. Yes, Your Honor. There was a dispute. At one point, one of the EEOC lawyers represented during a hearing that they did not identify. The reason they weren't providing the information is that they didn't have the names of any of the grieved individuals because they didn't investigate them. That's the basis for our investigation, failure to investigate defense, but that they did not have those names. Later, another EEOC lawyer made a representation that they did have some names. Judge Ellison looked at those competing and made a determination that he believed that there had been no individuals identified during the investigation or in the conciliation process. All right, counsel. Thank you. Good morning, Your Honors. I'm Jim Tucker with the EEOC. If I could very quickly and briefly come back to the issue we were just discussing regarding the notion of whether or not the Commission identified any individuals during the investigation, just to answer specifically what record evidence there is. Record site number 6099 is a document created by an attorney that was representing BASPRO earlier on in the investigation who recognized that our district director, and this is quoting, asserted that the EEOC had identified approximately 100 specific individuals who were alleged victims of discrimination. Following that, Your Honor, I have a letter, January 14, 2011, authored by our esteemed counsel recognizing that the Commission had cited quote, 100 identified unsuccessful minority applicants at one particular store. There's no reason, and again, excuse me, record site for that is ROA 6400 for that page. The Commission identified that there were individuals that were affected by this pattern of practice. Now, the Commission did not individually investigate the allegations as to each and every possible claimant because, number one, that creates an incredible burden on the agency, as recognized by this court in Sun Oil, and number two, again as recognized by this court in Sun Oil, the Commission is not required to individually investigate every single member of a potential pattern or practice of discrimination. Well, the classic operation under 706 was that it did proceed with individual, had to underline that originally the EEOC did not, was simply a conciliation process, and they did not have a direct enforcement mechanism. Then they first got the power to enforce themselves, but they had to be enforcing on behalf of individuals. So there is this underlying obligation of individualized examination that sort of antecedent to the question of conciliation. Do you follow what I'm saying? I do, Your Honor, but again, consistent with at least what this court has said in Sun Oil and what the Supreme Court recently said in Makamani, the notion is that there is a great amount of discretion that is provided to the Commission in the processing of its administrative prerequisites. And again, consistent with Sun Oil, where this court recognized that a mere statistical showing of a pattern or practice of discrimination is sufficient for conciliation purposes to put the employer on notice that every employment practice that had taken place, every denial of a job during the period of that practice was discriminatory, at least there's that inference, that that was sufficient. So again, recognizing that there was no requirement to individually identify and investigate each individual possible claimant. That was the question at issue in Sun Oil. Why shouldn't we read the Civil Rights Act and its creation of rights to cover punitive damages as focusing on individuals and not allowing you to bring out the punitive damages remedy at all if you elect to proceed as you are, that is, with a larger matter? In other words, rather than that, one can argue, as counsel does, that that displaces the whole process under 706. The other alternative argument, a lesser argument, not lesser in strength, but it's a different argument, is that the 1991 Civil Rights Act in conferring punitive damages did not contemplate that it would be used in cases other than focusing upon individuals, giving Wal-Mart and these other matters, and so hence the EEOC could go forward with the litigation, but the remedy, one remedy that you've got to leave at home, narrowing that quiver, that you don't have is punitive damages. Let me speak to that, Your Honor, please. All right. First and foremost, there's certainly nothing in the statute that took away or limited the ability of any party to proceed with the damages that were provided under Section 706 in 1991. Speak a little more slowly. I'm sorry, Your Honor. You've come south now to my southern home. I apologize. When Congress enacted the 1991 amendments, it did not affect Section 706 and it did not provide any language that limited which parties were or were not available or were not able to take advantage of the damages, provisions that were being added. And most importantly, Your Honor, in the Waffle House decision, the Supreme Court reckoned this was a post-91 Act amendments decision. The Supreme Court specifically recognized that the 1991 amendments were enacted against the backdrop of general telephone, which Your Honor correctly characterized earlier as not being possible to be understood as anything other than a pattern or practice case. In fact, the Supreme Court, while it did not say Teamsters in that case, what it did recognize in that decision was that in the district court, the commission had bifurcated the questions of class liability, that's the court's term, and damages. Having done that and having obtained a class-wide adjudication of liability of particular practices, then the definition moved to individualized determinations, but as to whether of injury and compensation. That's always the case in the district court. And only then the argument would be that you cannot then have earlier determined punitive damages. You're either going to take punitive damage off the table, or you're going to have to turn to the individualized cases and try to prove it up each time. Your Honor, let me make one more comment about the 1991 Act, and then I'd like to discuss that a little bit more thoroughly, your question. One other aspect of the Waffle House decision was not only that it noted that the 1991 Act was enacted against the backdrop of general telephone, but in Waffle House, the Supreme Court specifically stated that the compensatory and punitive damages that were provided by the 1991 Act were specifically available to the commission for its actions under Section 706. It specifically discussed that in the same breadth as saying that this was something that was being enacted against the backdrop of general telephone. The two cannot be extricated. But to get to the question of how to deal with punitive damages in the bifurcated proceedings, again, the notion of liability is a separate question at the initial Stage 1, at the Stage 1 of a Teamsters analysis. This Court recognized that in Allison. The Supreme Court recognized that in Teamsters in every case that discusses Teamsters. The question of liability is separate from the question of which individuals are entitled to recover damages. They are two completely separate inquiries. So if the Court determines in Stage 1... That's a given. Right, okay. But that doesn't answer the question of punitive damages, the problem. All I'm suggesting to you is that the question I have is whether these are really problems of manageability that will be taken care of in the course of litigation as to whether or not you're going to go with punitive damages or not. Or does it go to the question of what, in fact, the power of the EEOC under 706? I firmly believe that the authority is there for the Commission to still secure punitive damages under Section 706. Yes, the authority does still exist for the Commission to get the damages under... to get punitive damages under 706. Manageability is one aspect of it because, of course, for a Seventh Amendment concern, the bottom line is to make sure that any subsequent jury does not re-examine the factual issues that are determined by a prior jury or a prior fact-finder, which is why the distinction between a Phase 1 and Phase 2 analysis under Teamsters is important to understand because, again, as this Court, the Supreme Court, have made clear, they are completely different legal issues between a liability finding in Phase 1 and the individualized determinations that are undertaken in Stage 2. They are simply separate processes. So for a court to manage the concerns about overlap is simply just making sure that it's cognizant of those concerns. And this district court has made perfectly clear that it is very well aware of Seventh Amendment considerations,  but the defendant has a right to a jury trial if it's a liability. That's correct, Your Honor. And the jury is going to have to determine that... if they found liability, then counsel opposite suggests that the Seventh Amendment would not tolerate anything other than a unitary disposition. That the same jury determined liability. Do you want to comment on that? I will, Your Honor. Simply, it's a misunderstanding that the factual question regarding a liability for a pattern of practice of discrimination is a different legal question under Kolstad from whether or not the employer engaged in that conduct knowing that it was contrary to federal law. That's what Kolstad stands for, the proposition that it is a different question altogether substantively. Whether or not you acted with a discriminatory motive, which is the pattern of practice for the liability under Section 703 of the statute, as opposed to whether you acted with the requisite malice or reckless indifference to the protected rights of the individual. That is, the difference between knowing that you're doing something that's discriminatory and knowing that you're doing something that is illegal. Why don't you just proceed under 707 where you quite clearly can get back pay? Well, we can get back pay, Your Honor, but we cannot get punitive damages. We cannot get compensatory or punitive damages, though, Your Honor. That's an important aspect of full relief for victims of discrimination. As opposed to back pay, or in addition to back pay. Is that so? I'm afraid my question goes to the administrative discretion about where you go. I'm just trying to get a sense of the incentives to go one way or the other. You've always been able to, under 707, to proceed straight on and adjudicate these things very much like you want to adjudicate this. The only difference I'm seeing is . . . It's not insignificant. If I were representing the defendant, I think that's a whole apple. That's why we're here. How much is this going to cost? I understand. So it's a fight over whether you . . . It's really a fight over whether you get the benefits of the 91 supplements to back pay. Well, again, the Supreme Court made perfectly clear in Waffle House, those damages are available to the Commission in its Section 706 actions, and we can recover those damages. It suggested in no way, shape, or form that there was something that we could not. Again, I believe that it's an important distinction between this notion of what the legal questions are that are at play and how the court will manage and make sure that no subsequent jury would revisit another finding. Now, the Commission did state at one point earlier in the litigation that there would be a concern over overlap with punitive damages if multiple juries in Stage 2 were each addressing the question of liability for punitive damages. Of course, you can't have four different juries answering the same question about a singular pattern of practice. You're going to have a conflict. But that's different from having a liability determination in Stage 1 and a determination as to remedial availability in Stage 2, or even if you have a liability determination in Stage 2, making sure that that is confined to an individual jury and not, again, revisited. If I could speak to one other particular issue regarding the size of this case, Your Honor. Again, counsel has represented that there could be up to 50,000 victims in this case and had stated that there was an unfairness present because there are only 4,000 identified job openings but 50,000 victims, therefore 46,000 individuals who could not have been discriminated against. That's a fundamental misunderstanding of how discrimination works. If I'm an employer and I have one job opening and I get five black job applicants who are qualified and I will reject each of those applicants because of their race, I've discriminated five times and I have five potential victims of discrimination. There may be some interesting calculations and determinations that need to be made to see who would have received back pay because obviously if there was no discrimination, one person would have been hired. The other wouldn't have had an opportunity. But it does not remove the fact that they have still discriminated. Four of them weren't injured by the discrimination. I'm sorry? Four of them were not injured by the discrimination. Well, they may not have been injured in back pay, but depending on the circumstances, there may have been some compensatory. That suggests that compensatory damages is an elusive element to me. Especially in a hiring case, it's a difficult issue. We recognize that there's, you know, but again, with the proper factual predicate, I don't think it's excluded. When you're talking about compensatory damages, are you talking about those four? I'm talking about if there was. Yes, Your Honor. Yes, five minorities apply. Let's say five blacks apply and they are for one job and all are rejected. Then only one could be, as among them, only one would get back pay, I suppose. But then the other four, are you going to talk about compensatory damages or have they been subjected to them? What's the measure of that? If there were sufficient facts and evidence to support such a conclusion, yes, Your Honor. As a matter of law, they're not excluded from recovering those damages if there is evidence that the circumstances under which they were rejected were sufficiently egregious to cause them a compensable harm. Also, the availability of punitive damages would still be there for those folks. Just the same as the commission could. That's a matter. Well, having been subjected to a discriminatory system can be seen as adequate standing, meaning that there is an injury submission in Article III, but I have a hard time seeing that in the world of litigation of damages and measurements without it being open-ended. My point generally, Your Honor, was again using a hypothetical to explain that just because there were only 4,000 job openings does not mean that there were only 4,000 victims. Well, you're suggesting actually that they're justifying their fears. Well, Your Honor, part of what Bass Pro is advancing in this case is... I thought you were going to go the other way and say, well, no, there's only going to be one, but you didn't. You're just saying, yeah, you're right. Well, that's right, and there's a reason that I'm saying that, Your Honor, and that is there's a notion in this case that Bass Pro is advancing that there is a critical mass at some point where the discrimination becomes so broad and so large that it cannot be reached by the statute or by the judiciary, and we frankly disagree with that, and so I'm not going to shy away from the possibility that there could be a large number of claims. There could also be a smaller number of claims. We're still very early in discovery in this case, Your Honor. If there are any further questions about this issue or the investigation aspect of this case, Your Honor? Thank you very much. Conservative counsel. Your Honor, when the... Speaking to the issue of punitive damages, when Congress enacted the Civil Rights Act of 1991, it said the following. In an action brought by a complaining party under Section 706 or 717 of the Civil Rights Act of 1964, then those people can obtain compensatory and punitive damages. It would have been, had Congress intended to do so, very easy for them to have written the statute to allow for compensatory and punitive damages in a pattern or practice case brought by the EEOC. All they would have had to have done is say, in an action by a complaining party under Section 706, and then add a comma, 707, and then continue as they did in writing the statute. They did not do that. They excluded 707 from the entitlement to compensatory and punitive damages. What happens if you allow the EEOC to prove a violation under Section 706 using the very same analytical framework, the Teamsters framework, that it uses to prove a violation, a pattern or practice claim under Section 707, then what you've done is merged Section 707 and 706 into a hybrid claim that essentially creates a pattern or practice claim under Section 706 and gives the EEOC the ability to... That was already the case, at least with regard to back pay. Well, back pay... 707, they could... There was no jury, I mean, no Rule 23. They could go at you, prove a pattern or practice, and so forth. And the same thing could do under 706. And they still can. And they still can. There's no question under 707 that compensatory and punitive damages are not available. But if we do what the EEOC is asking, we make them available in a pattern or practice case, in the very same case that they could have brought under Section 707, they will now be able to get compensatory and punitive damages. And they can do it in a case where this case is a perfect example in which there are no prerequisites that address specifically the issues of compensatory and punitive damages. They don't identify, and with respect to... Doesn't that cut both ways? I mean, it so easily could have been done, but it wasn't to an extent. The law at the time was quite... was there, so the operative principle that they... And I...legislation against the backdrop of the law. In other words, yes, they could have said it one way or the other, but since they fell silent about it, and they didn't do that, and then the law against which the statute was enacted simply was not hostile to it, it makes it difficult. The Civil Rights Act, Your Honour, only dealt with remedies. It didn't address the methods of proof and there's no indication in the legislative history that they intended to do so. With respect to the punitive damages issue, first of all, Cold Stat says that what you have to look at in determining whether a punitive damages is the individual. You have to look at what was the behavior of the manager or the person alleging to have discriminated against that individual, and then to determine whether or not the defendant can assert the good faith defense, you look at what steps have been made by the employer to comply with the statute. That second step is where the problem comes in with an overlap with the finding of a pattern or practice of discrimination, because you're looking at similar claims and similar evidence with respect to the pattern or practice issue in Stage 1 and the E. Why wouldn't that determination be made with regard... The burden would be upon the EOC to establish the requisites for punitive damages in proving not just to one individual but to anyone who was hurt by a practice, because the practice was so pernicious, intentional, and so forth, so that, in other words, a person who was injured by that practice has the same damages, in other words. May I answer the question? Yes, please. I'll give you two more minutes. You've had not much of your five minutes so far. Thank you, Your Honor. You're giving back some of my time, but I'll be with you another 30 minutes. I don't want to give him all your time. Just a couple more of his minutes. Your Honor, the... If what the court is suggesting is determination of punitive damages in the Stage 1 process... I'm not suggesting. I'm just really trying to... If that's what the court was asking about, is the determination of punitive damages in the Stage 1 process, then there are due process issues with that as well, because at that point, you can't determine punitive damages. Compensatory punitive damages can't be presumed. That's clear. In Stage 1, you're not making a liability determination with respect to any particular individual. It's the pattern or practice issue that's at stake in Stage 1. So you can't start... You can't issue punitive damages to an individual in Stage 1 without first having found liability. And if you're finding... That's not the purpose of Stage 1 under Teamsters. And if you started trying to do that, which the EOC has suggested in one case... Let's find the liability with respect to the Stage 1 anecdotal witnesses. Then you run up against a due process problem of a witness... an anecdotal witness over here who worked in one store determining liability, but the jury is hearing evidence about what happened to a person in another store across the country. And in... I believe it was the Mooney or Scarlett case, this court addressed that issue and said that there are due process issues there as well. All right. I have no doubt both would have a lot more to say if given the chance. Your chance is over. I'll cede my three seconds, Your Honor. Thank you. We will take a brief recess.